YOST v. HALL.

"3. In what amount, if any, is the defendant indebted to the plaintiff?
Answer: No."

From judgment on the verdict plaintiff appealed.

*Smith & Walker for plaintiff, appellant.*
*Miller & Moser for defendant, appellee.*

REBECCA TARLTON YOST, ADMINISTRATRIX OF THE ESTATE OF WILLIAM
ROBERT YOST, JR., PLAINTIFF, v. MYRON H. HALL AND WILLIAM
FRANCIS BROADDUS, DEFENDANTS, AND THE RETAIL CREDIT COM-
PANY, ADDITIONAL DEFENDANT.

(Filed 18 April, 1951.)

1. **Automobiles § 8i—**

Where a vehicle on a servient highway approaches an intersection at
approximately the same time as a vehicle on his right traveling on the
dominant highway, the vehicle on the dominant highway has the right
of way both under G.S. 20-155 (a) and G.S. 20-158.

2. **Automobiles § 18g (5)—**

The physical facts at the scene may be more convincing than oral testi-
mony.

3. **Automobiles § 18g (1)—**

In the absence of evidence to the contrary it will not be assumed that
either motorist involved in a collision was operating his vehicle in excess
of the legal limit permitted under the circumstances.

4. **Automobiles § 8i—**

The fact that a motorist on a servient highway reaches an intersection
a hairsbreadth ahead of one on the dominant highway does not give him
the right of way, but it is his duty to yield the right of way to the motorist
on the dominant highway unless such motorist is a sufficient distance from

the intersection to warrant the assumption that he can cross in safety before the other vehicle, operated at a reasonable speed, reaches the crossing.   G.S. 20-158.

**5. Automobiles § 18g (2)—**

Where each defendant testifies that his injury in the collision at an intersection produced a state of retrograde amnesia so that neither could say whether he saw the other vehicle involved in the accident, testimony of statements made immediately after the collision by defendant driver in the presence of defendant owner, who was a passenger, that they were in a hurry, that he did not see the railroad track or stop sign, did not remember seeing the other vehicle or the stop sign before the intersection with a dominant highway, *held* for the jury as to whether they amounted to nothing more than a disavowal of memory, the asserted amnesia not applying to such statements.

**6. Automobiles § 18g (5)—**

Where a motorist is mortally wounded in a collision so that he may not have been in condition to apply his brakes or make any effort to stop his vehicle after the impact, the fact that his vehicle traveled a distance of ninety feet after the collision is a mere circumstance for the consideration of the jury, and does not compel the conclusion that he was traveling at an excessive speed at the time.

**7. Automobiles §§ 8i, 18h (2)—Physical evidence held to show negligence in operation of car along servient highway causing collision at intersection.**

Intestate was killed at an intersection in a collision between his car, which was traveling a dominant highway, and the automobile owned by one of the defendants and driven by the other, which approached the intersection from intestate's left along the servient highway, there being appropriate signs along each of the highways before the intersection.   Defendants' car was damaged across its front end and intestate's car was damaged on its left side.   Immediately after the accident defendant driver stated he did not see the stop signs or intestate's car until the impact. At the trial both defendants testified they were suffering with retrograde amnesia and could not remember anything immediately preceding or at the time of the collision, so that there was no eyewitness testimony as to the accident.   *Held:* Considering the evidence in the light most favorable to plaintiff, it warrants an inference that the two automobiles approached the intersection at approximately the same time and that defendants failed to see, or seeing, failed to heed the presence of intestate's car and yield it the right of way, and therefore the evidence was sufficient to be submitted to the jury on the issue of negligence.

**8. Appeal and Error § 39a—**

Alleged errors which do not challenge the validity of the trial in respect to the verdict as rendered must be deemed immaterial and harmless.

**9. Highways § 8e—**

The State Highway and Public Works Commission has authority to designate one highway as the dominant highway at an intersection not-

withstanding that it was built and is maintained in part by Federal funds and forms a link in an interstate system designated as U. S. highways. G.S. 20-158.

**10. Automobiles § 18g (1)—**

The fact that a party is prevented from testifying as to events relating to the collision because of amnesia resulting from injuries received in the accident raises no presumption that he exercised due care when there is positive evidence of negligence on his part, and in such event the loss of memory should not be considered either in favor or against him.

**11. Same—**

The presumption that a motorist exercised due care in the absence of evidence to the contrary cannot be used to create a presumption of negligence on the part of the other driver involved in the collision.

**12. Automobiles § 18i—**

An instruction in general terms on the questions of negligence and proximate cause will not be held for error as failing to apply the law to the facts in evidence when theretofore the court has correctly instructed the jury with particularity as to the acts of negligence relied on, the evidence in support thereof, and the facts necessary to be found by the jury to support an affirmative answer to the issue.

**13. Trial § 7—**

Comment by counsel in their arguments relating to compensation received by intestate's widow under the Workmen's Compensation Act and as to who got the benefit thereof, *held* cured by the court's correct categorical instruction that the jury should not consider the matter in determining the issue of damages.

**14. Death § 8—**

Any error in instructions upon the rule for ascertaining the present cash value of decedent's life to his dependents or in failing to elaborate upon the rule upon the request of the jury, *held* cured by the subsequent submission of a mathematical formula, to which counsel for both sides agreed, the formula, not appearing of record, being presumed correct and to have fully satisfied the members of the jury.

**15. Trial § 7: Death § 8—**

Comment by counsel in contrasting the financial condition of the widow of plaintiff's intestate with counsel's projected probable earnings of defendants, although highly improper, *held* cured, upon the record in this case, by the court's instruction that the jury should not consider the circumstances of the parties in determining the issue of damages and should disregard the argument, and should take the law from the court.

APPEAL by defendants from *Gwyn, J.,* October Term, 1950, ROWAN. No error.

Civil action to recover compensation for wrongful death and for damages to an automobile in which defendants plead counterclaims.

On the afternoon of 18 March 1949, plaintiff's intestate was traveling in a northwesterly direction on U. S. Highway 52, going from Hamlet to Salisbury. Defendants Hall and Broaddus, together with their wives, were traveling in a northeasterly direction on Highway 49, going from Charlotte to Raleigh. The automobile they were using belonged to Hall and was being operated by Broaddus. Highway 52 extends in a northwesterly and southeasterly, and Highway 49, in a northeasterly and southwesterly direction. The two highways intersect at approximately right angles at a point in Stanly County. On Highway 49 west of the intersection there are a number of warning signs, including a "SLOW DANGEROUS INTERSECTION," "JUNCTION," "HIGHWAY 52," and a "THROUGH TRAFFIC—STOP" sign. Similar signs, other than a "THROUGH TRAFFIC—STOP" sign, were along Highway 52 to the south of the intersection.

The two cars collided in the intersection, each car at the time being on its right-hand side of the road. The Yost car was damaged on its left side from the door to the bumper. It proceeded across Highway 49 for a distance of ninety feet and stopped at or near the road ditch. Yost was in a dazed condition and died the next morning. The Hall car was damaged across its front end. It traveled on across Highway 52 a distance of 42 feet. When found, it was on its right side. The top was badly damaged and its right side was practically demolished. Just how far it traveled on its side is not made clear. All the occupants of the Hall car were injured.

The plaintiff's intestate was employed by the Retail Credit Company. In their answers each individual defendant pleads a counterclaim against plaintiff's intestate and his employer for damages on account of injuries sustained by him. On their motion the Credit Company was made a party defendant.

There were no eyewitnesses to the wreck other than the occupants of the two cars. Each defendant testified that the injuries he received produced retrograde amnesia, and he could not recall anything immediately preceding or at the time of the collision. The wife of neither defendant was present.

The court below submitted ten issues to the jury. The first three— negligence, contributory negligence, and damages—were directed to plaintiff's cause of action. The remaining six were directed to the two cross actions or counterclaims. The jury answered the first three issues in favor of plaintiff and returned same as their verdict. From judgment on the verdict the individual defendants—hereafter referred to as defendants—excepted and appealed.

*Linn & Shuford for plaintiff appellee.*

*Deal & Hutchins, Craige & Craige, and Smith, Sapp, Moore & Smith for defendant appellants, Myron H. Hall and William Francis Broaddus.*

*C. H. Gover for additional defendant appellee, The Retail Credit Company.*

BARNHILL, J. The absence of direct testimony in respect to the circumstances surrounding the collision is provocative of much speculation as to just what did happen. Such speculation might well generate contradictory surmises. But we are interested only in the fact situation disclosed by such evidence as the parties were able to produce.

If the two automobiles approached the intersection at approximately the same time, then it was the duty of the defendants to yield the right of way to Yost. This, for two reasons: (1) the Yost car was to their right, G.S. 20-155 (a), and (2) they were traveling on the servient highway, G.S. 20-158.

There was no eyewitness account of the collision. In appraising the testimony for the purpose of determining whether there is any evidence of negligence on the part of the defendants, in that they breached this duty, sufficient to warrant the submission of the cause to a jury, we are driven in large measure—though not altogether—to the consideration of the physical facts developed by the testimony. Even so, physical facts are sometimes more convincing than oral testimony. *Powers v. Sternberg,* 213 N.C. 41, 195 S.E. 88.

The court, in the absence of proof to the contrary, may not assume that either motorist was operating his vehicle in excess of the legal limit permitted under the circumstances. We review the evidence with that in mind.

The two automobiles collided within the intersection. They arrived at the same point at the same time. Their approach was so timed that both could not proceed in safety. If neither stopped, a collision was inevitable.

The Hall car evidently entered the intersection when the Yost vehicle was at least four feet away. But the fact a motorist on a servient road reaches the intersection a hairsbreadth ahead of one on the dominant highway does not give him the right to proceed. It is his duty to stop and yield the right of way unless the motorist on the dominant highway is a sufficient distance from the intersection to warrant the assumption that he can cross in safety before the other vehicle, operated at a reasonable speed, reaches the crossing. *S. v. Hill, ante,* 61, and cases cited.

Shortly after the accident Broaddus, in the presence of Hall, made the statement that he did not see the railroad track or the stop sign. They were in a hurry. He told the officer that he did not remember seeing the

Yost car until he hit it. When asked if he saw the stop sign, he replied: "I won't say I did nor I won't say I didn't; I don't remember seeing the sign." While each defendant testified his injury produced a state of retrograde amnesia and that is the reason they cannot say whether they saw the sign or the Yost car, no such qualification was attached to these statements made shortly after the collision. So then, it was for the jury to say whether the statements amounted to nothing more than a disavowal of memory.

But the defendants insist the fact the Yost automobile continued on for a distance of ninety feet after the collision indicates that Yost was traveling at an excessive speed at the time. Standing alone and unqualified by any other circumstance, this fact might compel, or at least permit, that inference. This we need not now decide, for it appears that Yost was in a dazed or unconscious condition, was mortally wounded, and died in less than twenty hours after the collision. It may well be he was in no condition to apply his brakes or make any other effort to stop his vehicle. The distance he traveled after the collision, under the circumstances here disclosed, was for the consideration of the jury. *Bailey v. Michael*, 231 N.C. 404, 57 S.E. 2d 372.

The evidence, considered in the light most favorable to plaintiff, clearly warrants the inference that the two automobiles approached the intersection at approximately the same time, and defendants failed to see, or seeing, failed to heed the presence of Yost approaching the intersection on the dominant road. *Reeves v. Staley*, 220 N.C. 573, 18 S.E. 2d 239.

The jury's verdict on the first three issues is determinative. Any exceptions or assignments of error relied on by defendants which do not challenge the validity of the trial in respect to the verdict as rendered may be by-passed. Even if they point out error in the trial, the error must be deemed immaterial and harmless. *Winborne v. Lloyd*, 209 N.C. 483, 183 S.E. 756; *Randle v. Grady*, 228 N.C. 159, 45 S.E. 2d 35; *In re Will of Kestler*, 228 N.C. 215, 44 S.E. 2d 867; *Coach Co. v. Motor Lines*, 229 N.C. 650, 50 S.E. 2d 909; *Call v. Stroud*, 232 N.C. 478, 61 S.E. 2d 342.

Certain of our highways are built and maintained in part out of funds contributed by the Federal government. They form links in an interstate system and are designated as U. S. highways. They are, nonetheless, State highways under the supervision and control of the State Highway and Public Works Commission. G.S. 20-158 is applicable to these just as it is to other State highways. The contention that Highway 52 was not a dominant or through highway for want of authority in the State Commission to so designate it is without validity.

When a person survives an accident but is unable to testify concerning the events leading to the accident, by reason of the loss of memory result-

ing from injuries he sustained in the accident, it will be presumed, in the absence of evidence to the contrary, that he exercised due care. Anno. 141 A.L.R. 872. The defendants seek to invoke this rule and assert that the court's charge in respect thereto deprives them of the benefit thereof. In this we cannot concur.

Presumptions of this type are created to fill a complete hiatus in the testimony. They are "bats of the law, flitting in the twilight but disappearing in the sunshine of actual facts." *Mockowik v. Railroad,* 196 Mo. 550. If there is any evidence to the contrary, the presumption fades out of the picture. It cannot be accorded evidential value or probative force, or be weighed against the evidence offered. *In re Will of Wall,* 223 N.C. 591, 27 S.E. 2d 728.

The rule has no application here for the reason there is evidence of negligence on the part of defendants to be considered by the jury. On this record the loss of memory, if it be a fact—and that was for the jury to decide—should not be considered either in favor of or against the defendants on the issue of negligence.

In considering this rule it is well to note that the absence of evidence of negligence on the part of one of the parties involved in a collision cannot be used to create a presumption of negligence on the part of the other.

In concluding its charge on the first issue, the court instructed the jury as follows:

"Upon the evidence you are instructed that if the plaintiff has satisfied you from the evidence and by the greater weight thereof that the defendants, in the operation of their automobile were negligent, that is, the defendants Hall and Broaddus, and has further satisfied you from the evidence and by the greater weight thereof that such negligence was the proximate cause of injury and death of the plaintiff's intestate and injury to his property, then it would be your duty to answer that issue yes. If the plaintiff has failed to so satisfy you, it will be your duty to answer that issue no."

This instruction is in general terms and is defective in that it fails to point out the particular acts of negligence alleged upon which plaintiff must rely, and does not state the facts, supported by evidence, which, if found to be true, would constitute negligence on the part of the defendants. Standing alone, it might be held for error in this respect. *Chambers v. Allen, ante,* 195. A consideration of the charge as a whole, however, leads to the conclusion the court below pointed out with sufficient particularity the acts of negligence relied on, the evidence in support thereof, and the facts necessary to be found by the jury to support an affirmative answer to the first issue. When it instructed the jury "that if the plaintiff has satisfied you . . . that the defendants, in the operation

of their automobile were negligent . . .," they, as intelligent men, considering what the court had theretofore said, must have understood that the court meant "negligent in the manner alleged and as heretofore particularized by the court."

For the purpose of establishing the employer-employee relation existing between the additional defendant, Retail Credit Company, and Yost, defendants offered evidence tending to show that the credit company was paying or had paid compensation to plaintiff under the Workmen's Compensation Act. Plaintiff, in rebuttal, testified that she understood the law under which she would have to reimburse the credit company out of any recovery she might obtain. There was some comment in the argument on this evidence. In respect thereto the court, in charging the jury on the third issue, instructed it as follows:

"Now, gentlemen, in this connection, before I give you that rule, I want to give you a further caution. The evidence which has been offered and talked about with relation to compensation and what becomes of it, who gets it or who doesn't, if your verdict as to damages should in anywise be affected by that evidence, then this trial would not represent justice, that would be a mistake.

"Now if there is any question in the mind of any juror as to whether you can follow the instructions which I shall presently give you as to the measure of damages, the yardstick that you have to apply to this evidence,—if there is any question in your mind as to this evidence as to compensation, if you will suggest it now I will withdraw a juror and we will try the case over and we won't have any further trial. I want that assurance."

In this the court was careful to caution the jury that any evidence regarding the payment to and receipt by plaintiff of compensation under the Workmen's Compensation Act was not to be considered by them on the issue of damages. The statement was correct. The caution was timely. It is as favorable to the defendants as to the plaintiff. Certainly, defendants were not entitled to any credit for the amounts so paid. That being true, the evidence had no bearing on the issue of damages.

In instructing the jury on the third issue, the court gave the correct rule on measure of damages to be applied in wrongful death cases. After the jury had been out for some time, it returned to the courtroom and the foreman stated to the court: "We would like for you to explain the yardstick for measuring damages." Thereupon the court again gave the correct rule. The foreman then stated: "What we want to know is how to determine the cash value." In answer thereto the court explained the rule in the language of our decisions. The foreman, apparently still uncertain that the jury understood the rule as stated, said: "How are we to determine the present cash value of that worth?" To this the court

replied: "The formula which I have given you is the rule laid down by the Supreme Court, and I doubt that I should undertake to elaborate upon it further." The jury retired.

"The court then recalled the jury and gave a mathematical rule for the computation of present cash value which was agreed to by counsel for all parties."

If there was any error in the instruction on damages respecting the rule for ascertaining the present cash value of the net amount the jury should find the deceased would have earned but for his untimely death, or in declining to elaborate further on the rule, it was rendered harmless by the action of counsel in submitting, or having the court submit, a mathematical rule to which they agreed. Just what that rule was, the record does not disclose. We must presume that it was correct and that it answered the question of the foreman to the satisfaction of the members of the jury.

This brings us to the most troublesome exception in the record. During his argument to the jury, Mr. Shuford, of counsel for plaintiff, drew a diagram on the blackboard for the purpose of showing that during the next five years defendants may earn some $75,000, and compared that to the situation of the widow. On objection and motion for new trial, the court cautioned the jury that the financial situation of defendants, so far as capacity to respond in damages is concerned, was not a matter for the jury to consider; that it should disregard the argument and render its verdict under the instructions of the court without regard to the comparative positions of the parties or the capacity of the defendants to earn money, and that the argument was improper and should be erased from their minds.

Again, later, after some further discussion of arguments made by counsel, the court instructed the jury:

"Gentlemen of the jury, any pitiable situation in which the widow may find herself and any pitiable situation which the minor child may be found is not a circumstance to affect in the least your verdict in this case. The Court will give you the scale that will be necessary for you to use in measuring any damage which may be recovered. The Court will give you the formula to apply if and when you come to apply the rule, and the Court will ask you to abide the rules as they are given and as they are announced by the Court. It is proper, gentlemen, for lawyers for all parties to argue their cases and to tell you what their conception of the law is, but in the final analysis it is the duty of the Court to tell you what the law is, and when the Court tells you what the law is and what the rules are, it is your duty under oath, gentlemen, to follow just those rules. If there is any question whether the jury can do that, I will withdraw a juror and direct a mistrial now."

The argument made by counsel exceeded the bounds of propriety. It constituted such an appeal to the sympathy of the jury as to warrant a new trial unless its prejudicial effect was fully effaced by the court. For that reason, we have weighed the question at some length. The deceased was a young man, robust and active. He was a highly satisfactory employee. His life expectancy, his ability, and his earning capacity warranted a finding that the present cash value of his prospective net income was substantial. Under all the circumstances, we are unprepared to say that the recovery may be considered excessive or above that to be expected under the evidence offered. It would seem, therefore, that the caution of the careful and painstaking judge who presided at the trial served to remove from the minds of the jurors any prejudicial impression aroused by the argument.

We have carefully examined the other exceptive assignments of error to which we have not specifically referred. They fail, either severally or in combination, to disclose any sufficient cause for disturbing the verdict.