64 S.E.2d 554 (1951)
233 N.C. 463
YOST
v.
HALL et al.
No. 379.
Supreme Court of North Carolina.
April 18, 1951.
*557 Linn & Shuford, Salisbury, for plaintiff appellee.
Deal & Hutchins, Winston-Salem, Craige & Craige, Salisbury, and Smith, Sapp, Moore & Smith, Greensboro, for defendant appellants, Myron H. Hall and William Francis Broaddus.
C. H. Gover, Charlotte, for additional defendant appellee, Retail Credit Co.
BARNHILL, Justice.
The absence of direct testimony in respect to the circumstances surrounding the collision is provocative of much speculation as to just what did happen. Such speculation might well generate contradictory surmises. But we are interested only in the fact situation disclosed by such evidence as the parties were able to produce.
If the two automobiles approached the intersection at approximately the same time, then it was the duty of the defendants to yield the right of way to Yost. This, for two reasons: (1) the Yost car was to their right, G.S. § 20-155(a), and (2) they were traveling on the servient highway, G.S. § 20-158.
There was no eyewitness account of the collision. In appraising the testimony for the purpose of determining whether there is any evidence of negligence on the part of the defendants, in that they breached this duty, sufficient to warant the submission of the cause to a jury, we are driven in large measurethough not altogetherto the consideration of the physical facts developed by the testimony. Even so, physical facts are sometimes more convincing than oral testimony. Powers v. S. Sternberg & Co., 213 N.C. 41, 195 S.E. 88.
The court, in the absence of proof to the contrary, may not assume that either motorist was operating his vehicle in excess of the legal limit permitted under the circumstances. We review the evidence with that in mind.
The two automobiles collided within the intersection. They arrived at the same point at the same time. Their approach was so timed that both could not proceed in safety. If neither stopped, a collision was inevitable.
The Hall car evidently entered the intersection when the Yost vehicle was at least four feet away. But the fact a motorist on a servient road reaches the intersection a hairsbreadth ahead of one on the dominant highway does not give him the right to proceed. It is his duty to stop and yield the right of way unless the motorist on the dominant highway is a sufficient distance from the intersection to warrant the assumption that he can cross in safety before the other vehicle, operated at a reasonable speed, reaches the crossing. State v. Hill, 233 N.C. 61, 62 S.E.2d 532, and cases cited.
Shortly after the accident Broaddus, in the presence of Hall, made the statement that he did not see the railroad track or the stop sign. They were in a hurry. *558 He told the officer that he did not remember seeing the Yost car until he hit it. When asked if he saw the stop sign, he replied: "I won't say I did nor I won't say I didn't; I don't remember seeing the sign." While each defendant testified his injury produced a state of retrograde amnesia and that is the reason they cannot say whether they saw the sign or the Yost car, no such qualification was attached to these statements made shortly after the collision. So then, it was for the jury to say whether the statements amounted to nothing more than a disavowal of memory.
But the defendants insist the fact the Yost automobile continued on for a distance of ninety feet after the collision indicates that Yost was traveling at an excessive speed at the time. Standing alone and unqualified by any other circumstance, this fact might compel, or at least permit, that inference. This we need not now decide, for it appears that Yost was in a dazed or unconscious condition, was mortally wounded, and died in less than twenty hours after the collision. It may well be he was in no condition to apply his brakes or make any other effort to stop his vehicle. The distance he traveled after the collision, under the circumstances here disclosed, was for the consideration of the jury. Bailey v. Michael, 231 N.C. 404, 57 S.E.2d 372.
The evidence, considered in the light most favorable to plaintiff clearly warrants the inference that the two automobiles approached the intersection at approximately the same time, and defendants failed to see, or seeing, failed to heed the presence of Yost approaching the intersection on the dominant road. Reeves v. Staley, 220 N.C. 573, 18 S.E.2d 239.
The jury's verdict on the first three issues is determinative. Any exceptions or assignments of error relied on by defendants which do not challenge the validity of the trial in respect to the verdict as rendered may be by-passed. Even if they point out error in the trial, the error must be deemed immaterial and harmless. Winborne v. Lloyd, 209 N.C. 483, 183 S.E. 756; Randle v. Grady, 228 N.C. 159, 45 S.E.2d 35; In re Will of Kestler, 228 N.C. 215, 44 S.E.2d 867; Carolina Coach Co. v. Central Motor Lines, 229 N.C. 650, 50 S.E.2d 909; Call v. Stroud, 232 N.C. 478, 61 S.E.2d 342.
Certain of our highways are built and maintained in part out of funds contributed by the Federal government. They form links in an interstate system and are designated as U. S. highways. They are, nonetheless, State highways under the supervision and control of the State Highway and Public Works Commission. G.S. § 20-158 is applicable to these just as it is to other State highways. The contention that Highway 52 was not a dominant or through highway for want of authority in the State Commission to so designate it is without validity.
When a person survives an accident but is unable to testify concerning the events leading to the accident, by reason of the loss of memory resulting from injuries he sustained in the accident, it will be presumed, in the absence of evidence to the contrary, that he exercised due care. Anno. 141 A.L.R. 872. The defendants seek to invoke this rule and assert that the court's charge in respect thereto deprives them of the benefit thereof. In this we cannot concur.
Presumptions of this type are created to fill a complete hiatus in the testimony. They are "bats of the law, flitting in the twilight, but disappearing in the sunshine of actual facts." Mockowik v. Kansas City, St. J. & C. B. Railroad Co., 196 Mo. 550, 94 S.W. 256, 262. If there is any evidence to the contrary, the presumption fades out of the picture. It cannot be accorded evidential value or probative force, or be weighed against the evidence offered. In re Will of Wall, 223 N.C. 591, 27 S.E.2d 728.
The rule has no application here for the reason there is evidence of negligence on the part of defendants to be considered by the jury. On this record the loss of memory, if it be a factand that was for the jury to decideshould not be considered either in favor of or against the defendants on the issue of negligence.
*559 In considering this rule it is well to note that the absence of evidence of negligence on the part of one of the parties involved in a collision cannot be used to create a presumption of negligence on the part of the other.
In concluding its charge on the first issue, the court instructed the jury as follows:
"Upon the evidence you are instructed that if the plaintiff has satisfied you from the evidence and by the greater weight thereof that the defendants, in the operation of their automobile were negligent, that is, the defendants Hall and Broaddus, and has further satisfied you from the evidence and by the greater weight thereof that such negligence was the proximate cause of injury and death of the plaintiff's intestate and injury to his property, then it would be your duty to answer that issue yes. If the plaintiff has failed to so satisfy you, it will be your duty to answer that issue no."
This instruction is in general terms and is defective in that it fails to point out the particular acts of negligence alleged upon which plaintiff must rely, and does not state the facts, supported by evidence, which, if found to be true, would constitute negligence on the part of the defendants. Standing alone, it might be held for error in this respect. Chambers v. Allen, 233 N. C. 195, 63 S.E.2d 212. A consideration of the charge as a whole, however, leads to the conclusion the court below pointed out with sufficient particularity the acts of negligence relied on, the evidence in support thereof, and the facts necessary to be found by the jury to support an affirmative answer to the first issue. When it instructed the jury "that if the plaintiff has satisfied you * * * that the defendants, in the operation of their automobile were negligent * * *", they, as intelligent men, considering what the court had theretofore said, must have understood that the court meant "negligent in the manner alleged and as heretofore particularized by the court."
For the purpose of establishing the employer-employee relation existing between the additional defendant, Retail Credit Company, and Yost, defendants offered evidence tending to show that the credit company was paying or had paid compensation to plaintiff under the Workmen's Compensation Act, G.S. § 97-1 et seq. Plaintiff, in rebuttal, testified that she understood the law under which she would have to reimburse the credit company out of any recovery she might obtain. There was some comment in the argument on this evidence. In respect thereto the court, in charging the jury on the third issue, instructed it as follows:
"Now, gentlemen, in this connection, before I give you that rule, I want to give you a further caution. The evidence which has been offered and talked about with relation to compensation and what becomes of it, who gets it or who doesn't, if your verdict as to damages should in anywise be affected by that evidence, then this trial would not represent justice, that would be a mistake.
"Now if there is any question in the mind of any juror as to whether you can follow the instructions which I shall presently give you as to the measure of damages, the yardstick that you have to apply to this evidence,if there is any question in your mind as to this evidence as to compensation, if you will suggest it now I will withdraw a juror and we will try the case over and we won't have any further trial. I want that assurance."
In this the court was careful to caution the jury that any evidence regarding the payment to and receipt by plaintiff of compensation under the Workmen's Compensation Act was not to be considered by them on the issue of damages. The statement was correct. The caution was timely. It is as favorable to the defendants as to the plaintiff. Certainly, defendants were not entitled to any credit for the amounts so paid. That being true, the evidence had no bearing on the issue of damages.
In instructing the jury on the third issue, the court gave the correct rule on measure of damages to be applied in wrongful death cases. After the jury had been out for some time, it returned to the courtroom *560 and the foreman stated to the court: "We would like for you to explain the yardstick for measuring damages." Thereupon the court again gave the correct rule. The foreman then stated: "What we want to know is how to determine the cash value." In answer thereto the court explained the rule in the language of our decisions. The foreman, apparently still uncertain that the jury understood the rule as stated, said: "How are we to determine the present cash value of that worth?" To this the court replied: "The formula which I have given you is the rule laid down by the Supreme Court, and I doubt that I should undertake to elaborate upon it further." The jury retired.
"The court then recalled the jury and gave a mathematical rule for the computation of present cash value which was agreed to by counsel for all parties."
If there was any error in the instruction on damages respecting the rule for ascertaining the present cash value of the net amount the jury should find the deceased would have earned but for his untimely death, or in declining to elaborate further on the rule, it was rendered harmless by the action of counsel in submitting, or having the court submit, a mathematical rule to which they agreed. Just what that rule was, the record does not disclose. We must presume that it was correct and that it answered the question of the foreman to the satisfaction of the members of the jury.
This brings us to the most troublesome exception in the record. During his argument to the jury, Mr. Shuford, of counsel for plaintiff, drew a diagram on the blackboard for the purpose of showing that during the next five years defendants may earn some $75,000, and compared that to the situation of the widow. On objection and motion for new trial, the court cautioned the jury that the financial situation of defendants, so far as capacity to respond in damages is concerned, was not a matter for the jury to consider; that it should disregard the argument and render its verdict under the instructions of the court without regard to the comparative positions of the parties or the capacity of the defendants to earn money, and that the argument was improper and should be erased from their minds.
Again, later, after some further discussion of arguments made by counsel, the court instructed the jury:
"Gentlemen of the jury, any pitiable situation in which the widow may find herself and any pitiable situation which the minor child may be found is not a circumstance to affect in the least your verdict in this case. The Court will give you the scale that will be necessary for you to use in measuring any damage which may be recovered. The Court will give you the formula to apply if and when you come to apply the rule, and the Court will ask you to abide the rules as they are given and as they are announced by the Court. It is proper, gentlemen, for lawyers for all parties to argue their cases and to tell you what their conception of the law is, but in the final analysis it is the duty of the Court to tell you what the law is, and when the Court tells you what the law is and what the rules are, it is your duty under oath, gentlemen, to follow just those rules. If there is any question whether the jury can do that, I will withdraw a juror and direct a mistrial now."
The argument made by counsel exceeded the bounds of propriety. It constituted such an appeal to the sympathy of the jury as to warrant a new trial unless its prejudicial effect was fully effaced by the court. For that reason, we have weighed the question at some length. The deceased was a young man, robust and active. He was a highly satisfactory employee. His life expectancy, his ability, and his earning capacity warranted a finding that the present cash value of his prospective net income was substantial. Under all the circumstances, we are unprepared to say that the recovery may be considered excessive or above that to be expected under the evidence offered. It would seem, therefore, that the caution of the careful and painstaking judge who presided at the trial served to remove from the minds of the jurors any prejudicial impression aroused by the argument.
*561 We have carefully examined the other exceptive assignments of error to which we have not specifically referred. They fail, either severally or in combination, to disclose any sufficient cause for disturbing the verdict.
In the trial we find
No error.