MRS. AUDREY M. BLALOCK, ADMINISTRATRIX OF THE ESTATE OF BETTY JEAN BLALOCK, DECEASED, v. JULIAN D. HART, MAE B. RAGAN, ADMINISTRATRIX OF THE ESTATE OF SAM B. RAGAN, DECEASED, AND SHERRILL LEE MOORE.

(Filed 24 February, 1954.)

1. **Automobiles §§ 8i, 18h (2)—Evidence held for jury on question of negligence of driver of car on servient highway.**

Evidence tending to show that the driver of an automobile along a servient highway collided at an intersection with a car driven along the dominant highway, with physical evidence tending to show that the car approaching along the servient highway was driven at excessive speed and that skid marks from this car did not start until about six inches beyond the center of the dominant highway on the driver's right of the servient highway, *is held* sufficient to make out a *prima facie* cause of action for negligence on the part of such driver in failing to give due heed to the stop sign erected along the servient highway, in failing to exercise ordinary care in keeping a lookout, and in failing to keep proper control of his car, G.S. 20-141; G.S. 20-158.

2. **Automobiles § 8i—Duty of driver along dominant highway in approaching intersection with servient highway.**

While the driver of a car along the dominant highway, in the absence of anything which gives or should give notice to the contrary, is entitled to assume and act upon the assumption, even to the last moment, that the operator of a car along the intersecting servient highway will stop before entering the intersection, the driver along the dominant highway is nevertheless required to exercise the care of an ordinarily prudent person under similar circumstances to keep a reasonably careful lookout, not to exceed a speed which is reasonable and prudent under the circumstances, and to take such care as a reasonably prudent man would exercise to avoid collision when danger of a collision is discovered, or should have been discovered. G.S. 20-158.

3. **Same: Automobiles § 18h (2)—Evidence of negligence of driver along dominant highway held sufficient to be submitted to jury.**

Evidence tending to show that the front of a car driven along a dominant highway at night collided with the right side of a car which entered the intersection from the left along the servient highway, with physical evidence tending to show that both cars were being driven at excessive speed, and that there were no skid marks before the point of impact, *is held* sufficient to be submitted to the jury on the question of the negligence of the driver of the car along the dominant highway in traveling at excessive speed and in failing to maintain a proper lookout and in failing to keep his car under proper control. G.S. 20-141; G.S. 20-158.

4. **Automobiles § 18d, 22—**

In this action to recover for the death of a passenger killed in a collision at an intersection of highways, the evidence *is held* sufficient to be submitted to the jury on the theory of the concurrent negligence of the drivers of the cars involved.

BOBBITT, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Harris, J.,* at April Civil Term, 1953, of WAKE.

Civil action by plaintiff to recover damages for the alleged wrongful death of her intestate daughter, Betty Jean Blalock, resulting from a collision of two automobiles in a highway intersection about three miles east of the Town of Angier, in Harnett County.

The collision occurred around 8 o'clock p.m. on 26 March, 1952, at the intersection of the Old Stage Road, which runs north and south, and the Angier-Benson Road, which runs east and west. An Oldsmobile sedan and a Ford coupe were involved in the collision. The plaintiff's intestate was riding as a passenger in the Oldsmobile, driven by Sam B. Ragan. Also present therein were Sherrill Lee Moore, owner of the car, and Edna Morris. The defendant Julian D. Hart was alone in the Ford coupe.

The Oldsmobile was traveling southwardly on the Old Stage Road; the Ford eastwardly on the Angier-Benson Road. A stop sign facing north on the Old Stage Road at the intersection made the Angier-Benson Road the dominant, through highway, and the Old Stage Road the servient highway. Therefore, as the two vehicles approached the intersection the Ford was on the favored highway as designated by the stop sign.

The Oldsmobile was driven into the intersection where it was struck on its right side by the front end of the Ford. The impact did not stop the forward progress of either automobile. The Ford continued on from 100 to 140 feet eastwardly in the same direction it had been going, and stopped "just off the highway down in the field" near the south side of the Angier-Benson Road.

The course of the Oldsmobile was diverted from south to southeast, in which course it continued for a distance of about 35 feet and struck a large oak tree located at the southeast corner of the intersection about 6 feet east of the Old Stage Road. The left side of the car struck the tree and "sort of wrapped around" it. All occupants of the Oldsmobile were killed instantly except Sherrill Lee Moore, who survived. Hart, the driver of the Ford coupe, also survived.

The plaintiff, administratrix of the estate of Betty Jean Blalock, brings this action, alleging that her intestate met her death as the result of the independent, though concurring, negligence of both drivers. Sherrill Lee Moore is joined as a defendant upon allegations that the Oldsmobile was being driven by Ragan with the permission and under the control or right of control of owner Moore, who was an occupant of the car, thus making Ragan's alleged negligence imputable to the defendant Moore. The record discloses that Moore did not file answer.

There were no eyewitnesses to the collision except the two survivors, the defendants Hart and Moore. Hart did not testify. Moore was called as a witness for the plaintiff, but gave only meager information concerning the occurrence. He said he was on the left side of the back seat of the Oldsmobile, with plaintiff's intestate being on his right; that "Sam Ragan was driving the car. . . . We went into the cross-roads and something hit us. It throwed me out of the car, I would say . . . thirty or forty feet. . . . When I became conscious the car was up against the oak tree. . . . I saw no lights over to my right as we entered the intersection . . ." Cross-examination: ". . . I know we had a collision and I don't know exactly how it happened or anything about it. . . . I was taken to the hospital."

The rest of the plaintiff's evidence may be summarized as follows: Tire marks led from "where the impact was" to where the Oldsmobile was "wrapped around" the tree. The marks started about 6 inches south of the center line of the Angier-Benson Road and on the right-hand side of the Old Stage Road, "on the Oldsmobile's right-hand side of the road" and "just about 6 inches" beyond the center of the east-west highway. "These marks . . . were from 8 to 10 inches wide . . ., heavy curving tire marks . . ." about 35 feet long "straight on down to the tree. . . ."

The evidence discloses there were no skid marks on the highway west of the point of impact. Nor were any such marks found on the highway east of the collision between the point of impact and the place where the Ford ran off the highway.

The body of plaintiff's intestate was "lying next to the root of the tree on the left side of the car. . . . The body of Edna Morris was . . . lying on the southwest side of the tree beside the Oldsmobile, on the opposite side from where the tree was hit." Sherrill Lee Moore was lying to the right of the oak tree about 20 feet from the car. The body of Sam Ragan was in the demolished car.

The Oldsmobile was damaged on both sides, and the "top was knocked clear off." (No damage to the front was shown.) It was mashed in on the left side where it was "wrapped partly around the oak tree." The right side was bent in. The witness Stephenson said it was "just tore up. . . . It was bent from the right toward the inside of the body. . . . I would say it was bent about 2 feet in. The frame was bent in . . . about the same as the body. It was bent from the (front) door to the back door panel. The front seat was thrown out of the car and the back seat was pushed up near the dashboard." Another witness said: ". . . the back part of the Oldsmobile was knocked . . . to within about 2 or 3 feet of the steering wheel." The front end of the Ford was damaged. "The headlights were knocked back . . ., the radiator was knocked back, the axle bent and the hood tore all to pieces."

The stop sign was located on the right-hand side of the Old Stage Road, near the intersection, "about 3 or 4 feet back from the Angier-Benson highway, north of it."

The plaintiff alleged and offered evidence tending to show that on the Angier-Benson Road there is a hill crest about 100 yards west of the intersection; that upon passing the hill crest, a motorist proceeding eastwardly toward the intersection travels downgrade to and through the intersection; that the crest of the hill is of such height as to obscure the vision of the intersection to a driver approaching from beyond the crest; that approaching the intersection from the north along the Old Stage Road, there are located upon the right or northwest corner buildings and structures surrounded by a grove of oak trees which tend to obscure the normal line of vision from one road to the other as motorists approach the intersection from the north on the Old Stage Road and from the west on the Angier-Benson Road, thus creating something of "a blind corner." The witness Broadwell said: ". . . in the northwest of the intersection there, there is a house and right smart trees. There are several buildings in there, three or four." The witness Stephenson said: "On the northwest corner of the intersection, there is a house. This house is 40 to 50 feet off the Old (Stage) Road. . . . It could be over that. It sits back a good way from the road. . . . There are some oak trees in the grove near the house." Cross-examination: "There is nothing to prevent anybody in an automobile coming down the road to the stop sign from seeing west up that road except the oak trees and the houses there; the oak trees did not have leaves on them in March when the accident happened."

The record discloses no evidence as to maximum sight distances from any fixed points along either of these roads across to the other except looking west up the Angier-Benson Road from the stop sign. And it is noted that the evidence fixes the stop sign as being located only 3 or 4 feet from the intersection. The witness Lynn Stephenson testified: "Going west from the intersection there is a little grade, couldn't say . . . how many yards . . . to where this grade crests but it is a good number of yards. An automobile coming down by this house and stopping at the stop sign on the (Old Stage) Road . . . looking west, . . . to the right on the Angier-Benson Road, . . . I would say he could see the light shining 50 or 75 yards. . . . He would know something was coming after it come over the crest of the hill. I would say it would be for some 75 or 100 yards maybe."

At the close of the plaintiff's evidence the defendants Ragan and Hart made separate motions for judgment as of nonsuit. Both motions were allowed. From judgment based on these rulings the plaintiff appeals.

*Bickett & Banks for plaintiff, appellant.*

*Ruark, Ruark & Moore for defendant Mae B. Ragan, appellee.*

*Neill McK. Salmon and F. T. Dupree, Jr., for defendant Julian D. Hart, appellee.*

JOHNSON, J.   The defendant Ragan's intestate was driving the Oldsmobile.   He was on the servient highway as designated by the stop sign. The evidence to the effect that the Oldsmobile was found immediately after the collision in a demolished condition against an oak tree beyond the intersection with the side next to the tree crushed in and the "back part of the car knocked" forward "to within 2 or 3 feet of the steering wheel," when considered with other corroborative proofs, is sufficient, we think, to make out a *prima facie* case of actionable negligence based on the plaintiff's allegations that Ragan in approaching and entering the intersection ahead of the oncoming car of the defendant Hart, who was on the favored highway, did not give due heed to the stop sign and failed to exercise ordinary care in keeping a lookout and in controlling the movement of his car.   G.S. 20-158; *Yost v. Hall*, 233 N.C. 463, 64 S.E. 2d 554; *Cox v. Lee*, 230 N.C. 155, 52 S.E. 2d 355; *Lee v. Chemical Corp.*, 229 N.C. 447, 50 S.E. 2d 181.   It necessarily follows that the court below erred in nonsuiting the case as to the defendant Ragan.

This brings us to the question whether the evidence is sufficient to take the case to the jury as against the defendant Hart, who was on the dominant, through highway.

It is established by our decisions that "the operator of an automobile, traveling upon a designated main traveled or through highway and approaching an intersecting highway, is under no duty to anticipate that the operator of an automobile approaching on such intersecting highway will fail to stop as required by the statute, and, in the absence of anything which gives or should give notice to the contrary, he will be entitled to assume and to act upon the assumption, even to the last moment, that the operator of the automobile on the intersecting highway will act in obedience to the statute, and stop before entering such designated highway."   *Hawes v. Refining Co.*, 236 N.C. 643, 650, 74 S.E. 2d 17, opinion by *Winborne, J.*   See also *Reeves v. Staley*, 220 N.C. 573, 18 S.E. 2d 239; *Johnson v. Bell*, 234 N.C. 522, 67 S.E. 2d 658.

However, the driver on a favored highway protected by a statutory stop sign (G.S. 20-158) does not have the absolute right of way in the sense he is not bound to exercise care toward traffic approaching on an intersecting unfavored highway.   It is his duty, notwithstanding his favored position, to observe ordinary care, that is, that degree of care which an ordinarily prudent person would exercise under similar circumstances. In the exercise of such duty it is incumbent upon him in approaching and

traversing such an intersection (1) to drive at a speed no greater than is reasonable and prudent under the conditions then existing, (2) to keep his motor vehicle under control, (3) to keep a reasonably careful lookout, and (4) to take such action as an ordinarily prudent person would take in avoiding collision with persons or vehicles upon the highway when, in the exercise of due care, danger of such collision is discovered or should have been discovered. *Hawes v. Refining Co., supra; Reeves v. Staley, supra; Cox v. Lee, supra;* 5 Am. Jur., Automobiles, Sec. 302; Annotation: 164 A.L.R. 8, p. 16.

In her complaint the plaintiff alleges in substance that the defendant Hart was actionably negligent, in that he (1) drove at an excessive rate of speed in violation of the provisions of the speed statute (G.S. 20-141), (2) failed to maintain a proper lookout, and (3) did not have his car under proper control.

As tending to support the foregoing allegations, the evidence adduced below discloses that the front part of the Hart car was practically demolished and that the right side of the Oldsmobile, including the frame, was mashed in about two feet. The testimony also discloses that the Hart car made no brake or tire marks before reaching the point of collision. The evidence of these physical facts, together with the further evidence that the Hart car traveled a distance of from 100 to 140 feet beyond the point of impact, bears directly on the question whether the defendant Hart was actionably negligent for faliure to comply with legal requirements as to speed, lookout, and control of his car. *Yost v. Hall, supra* (233 N.C. 463, 468); *Riggs v. Motor Lines,* 233 N.C. 160, 63 S.E. 2d 197; *Bailey v. Michael,* 231 N.C. 404, bot. p. 407, 57 S.E. 2d 372; *Cox v. Lee, supra* (230 N.C. 155).

This line of evidence, when viewed in its light most favorable to the plaintiff, as is the rule on motion to nonsuit, is sufficient to justify, though not necessarily to impel, the inference of negligence on the part of the defendant Hart as one of the proximate causes of the collision and resultant death of the plaintiff's intestate.

We conclude, therefore, that the evidence is sufficient to carry the case to the jury on the theory of concurrent negligence of both the drivers involved in the collision. See *Caulder v. Gresham,* 224 N.C. 402, 30 S.E. 2d 312; *Bumgardner v. Allison,* 238 N.C. 621, 78 S.E. 2d 752, and cases there cited.

The judgment below is

Reversed.

BOBBITT, J., took no part in the consideration or decision of this case.