ALDER MAE JERNIGAN v. COLONEL JERNIGAN AND RUFUS CAPPS.

(Filed 29 October, 1952.)

**1. Husband and Wife § 11—**

A wife may now maintain an action in tort against her husband.

**2. Automobiles §§ 18g (5), 18h (2)—**

While physical facts at the scene may speak louder than words, ordinarily the interpretation of the facts is the province of the jury, and therefore nonsuit may not be predicated upon the contention that the physical facts disclose that defendant was not traveling at excessive speed when there is testimony of witnesses that defendant was exceeding sixty miles per hour.

**3. Automobiles §§ 8i, 13—**

While ordinarily a motorist may assume and act on the assumption that the driver of a vehicle approaching from the opposite direction will comply with statutory requirements as to signaling before making a left turn across his path (G.S. 20-154), he is not entitled to indulge in this assumption after he sees or by the exercise of due care ought to see that the approaching driver is turning to his left across the highway to enter an intersecting road.

JERNIGAN *v.* JERNIGAN.

4. **Automobiles §§ 18h (2), 19a—Evidence held not to compel single conclusion that sole proximate cause of collision was illegal left turn made by driver of other car.**

    Plaintiff was a passenger in a car driven by her husband, which collided with another car traveling in the opposite direction along the highway. Plaintiff's evidence was to the effect that such other car turned to its left across the highway in the path of the car in which she was riding, without giving the statutory signal, in attempting to make a left turn into an intersecting highway. Plaintiff's evidence further tended to show that her husband was driving his car at an excessive speed and that he saw or could have seen the other driver undertaking to make the left turn when the cars were separated by a space of some three hundred feet in time to have avoided the accident, but that he did not slacken speed or change course until the cars were in virtual contact. *Held:* The evidence does not compel the single conclusion that the negligence of the driver of the other car in making the illegal left turn was the sole .proximate cause of the accident, but the evidence is sufficient to support a conclusion that the husband's negligence in driving at an unlawful speed and in failing to keep his car under reasonable control was the proximate cause or one of the proximate causes of the accident, and therefore the husband's motion to nonsuit should have been denied.

APPEAL by plaintiff from *Godwin, Special Judge,* at February Term, 1952, of JOHNSTON.

Civil action by automobile guest against her host and another motorist for personal injuries allegedly caused by the concurring negligence of both drivers when the other motorist attempted to make a left turn into an intersecting road in front of the host's automobile.

For ease of narration, the defendants Colonel Jernigan and Rufus Capps are called by their respective surnames. Jernigan is the husband of the plaintiff Alder Mae Jernigan.

State Highway No. 40 runs somewhat westerly from Benson in Johnston County to Coats in Harnett County. It is joined on the north by an unpaved road at a point four miles west of Benson. The juncture of State Highway No. 40 and the unpaved road is not within either a business or a residence district. On the afternoon of 25 June, 1950, a westbound automobile driven by Jernigan and an eastbound car operated by Capps traveled in opposite directions on State Highway No. 40. The two motor vehicles collided at the juncture of the highway and the unpaved road when Capps undertook to make a left turn from the highway into the unpaved road across the pathway of the oncoming automobile driven by Jernigan. As a result, the plaintiff, who was a guest in her husband's automobile, suffered injuries.

The plaintiff sued both Jernigan and Capps for damages for her personal injuries, alleging that such injuries were proximately caused by their concurring negligence. Each defendant answered, denying actionable negligence on his part.

The plaintiff testified in her own behalf at the trial. She also called seven witnesses to the stand. The plaintiff, Bobby Lee Jernigan, L. C. Jernigan, and Hubert H. McLamb testified to the circumstances attending the collision, and Mrs. Elgie Mae Allen, Dr. J. R. Johnson, Dr. A. E. Morgan, and Mrs. Addie Pearl Royall described the physical condition of the plaintiff subsequent to that event.

The plaintiff gave this testimony in person:

"Highway No. 40 . . . was a new hard-surfaced highway . . . The paved portion is about 18 or 20 feet (wide) . . . The shoulders were about 4 feet wide. The highway runs through a hilly section and there is the most roads coming into it, side roads, going to people's houses . . . I was traveling in a 1950 Ford with my husband. He was driving . . . He was running every bit of 60 . . . miles an hour . . . The highway was wet . . . We were about 100 yards away . . . when I first saw . . . the Capps car. . . . I did not see the Capps car before we got in 100 yards of it because the hill there on the side Mr. Capps was coming from is right smart steeper than the side we were on, and I did not see him until he came over . . . There was nothing in front of us to obstruct my husband's view the first time I saw the Capps car . . . The side road was visible to people traveling the highway . . . When I first saw the Capps car, I would say that the front wheel was probably already across the middle of the highway, pulling into this road. We were about 100 yards from the Capps car . . . The brakes on my husband's car were good. He could have stopped had he tried to when he first saw the (Capps) car. Running at the speed my husband was running the distance it would take to stop the car would be no more than 200 feet . . . He told me (afterwards) he thought he could get by without hitting Capps . . . My husband was right close to Capps, 15 or 20 yards, when he applied his brakes. When he hit the brakes, he hit the Capps car . . . The best I remember the front wheels . . . of the Capps car . . . was on the dirt . . . at that time . . . The car I was riding in got off of the hard surface highway on to the shoulder."

Other eyewitnesses stated that the left-hand front of the Jernigan automobile "struck" the left-hand front of the Capps car, and that the Jernigan automobile proceeded "two or three times its length," coming to rest in "the ditch against the bank."

There was no evidence as to whether or not Capps gave a left-turn signal.

When the plaintiff had produced her evidence and rested her case, each defendant moved for a compulsory nonsuit. The court allowed the motion of Jernigan, and the plaintiff excepted and appealed. The plaintiff thereupon advised the court that she did not desire to proceed further at

that time against Capps, and asked the court to dismiss the action as to him. This request was granted.

*J. R. Barefoot and E. R. Temple for the plaintiff, appellant.*
*A. M. Noble for the defendant, Colonel Jernigan, appellee.*

ERVIN, J. The common law disability of the wife to sue the husband at law has been removed by statute. In consequence, a married woman has a right of action against her husband for a tort causing personal injury. *King v. Gates,* 231 N.C. 537, 57 S.E. 2d 765; *Bogen v. Bogen,* 219 N.C. 51, 12 S.E. 2d 649; *Alberts v. Alberts,* 217 N.C. 443, 8 S.E. 2d 523; *York v. York,* 212 N.C. 695, 194 S.E. 486; *Roberts v. Roberts,* 185 N.C. 566, 118 S.E. 9, 20 A.L.R. 1479; *Crowell v. Crowell,* 180 N.C. 516, 105 S.E. 206; 181 N.C. 66, 106 S.E. 149; *Graves v. Howard,* 159 N.C. 594, 75 S.E. 998, Ann. Cas. 1914C, 565.

This being true, the appeal raises the solitary question whether the presiding judge erred in holding as a matter of law that the evidence introduced by the plaintiff at the trial was insufficient to establish actionable negligence on the part of her husband, the defendant Jernigan.

Jernigan contends that this question must be answered in the negative. He asserts initially that this is so because the testimony at the trial did not disclose any negligence whatever on his part. He concedes that under subsection (b) 4 of G.S. 20-141 the maximum permissible speed for a passenger car at the place described in the pleadings was fifty-five miles per hour, and that the witnesses testified that he drove his automobile at that place at a speed of not less than sixty miles an hour. He lays hold, however, on the celebrated declaration of that great jurist, the late *Chief Justice Stacy,* in *Powers v. Sternberg,* 213 N.C. 41, 195 S.E. 88, that "there are a few physical facts which speak louder than some of the witnesses," and argues that the physical facts in the instant case demonstrate the incredibility of the testimony of the witnesses that his speed exceeded the maximum permissible limit. This argument is untenable. It flies in the face of the general rule that what the physical facts say when they speak is ordinarily a matter for the determination of the jury.

Jernigan insists secondarily that the evidence at the trial compelled the single conclusion that there was no causal connection between any act or omission of his and the collision, and that the compulsory nonsuit was proper on that ground even if the evidence did suffice to show that he was driving at an unlawful speed.

His counsel advances these arguments to support this position: That Jernigan and Capps were traveling in opposite directions on State Highway No. 40, each being on his own right-hand half of the highway; that Jernigan rightly assumed, and rightly acted on the assumption, that

Capps would observe the precautions prescribed by G.S. 20-154 with respect to seeing whether such movement could be made in safety and with respect to signaling his intended action before he undertook to make a left turn on the highway; that Capps violated this statute by suddenly making an unsignaled left turn across Jernigan's path when the two automobiles were so close to each other that the collision could not be avoided by any act on the part of Jernigan; that the collision would have happened regardless of whether Jernigan's automobile had been going faster or slower; and that consequently the sole proximate cause of the collision and the resultant injuries to the plaintiff was the improvident left turn made by Capps.

The secondary position of Jernigan is valid in law if, and only if, it is well grounded in fact. *Butner v. Spease,* 217 N.C. 82, 6 S.E. 2d 808. Hence, we are confronted at this point by the subsidiary inquiry whether the evidence at the trial compelled the single conclusion that the collision occurred in the manner depicted by the able counsel who represents Jernigan.

A motorist proceeding along the highway ordinarily has the right to assume, and to act on the assumption, that the driver of a vehicle coming from the opposite direction will comply with statutory requirements before making a left turn across his path. *Webb v. Hutchins,* 228 N.C. 1, 44 S.E. 2d 350; *Brown v. Products Co., Inc.,* 222 N.C. 626, 24 S.E. 2d 334; *James v. Coach Co.,* 207 N.C. 742, 178 S.E. 607. The motorist is not permitted by law to indulge in this assumption, however, after he sees or by the exercise of due care ought to see from the conduct of the approaching driver that the assumption is unwarranted. *Hoke v. Greyhound Corp.,* 227 N.C. 412, 42 S.E. 2d 593; *Brown v. Products Co., Inc., supra; Guthrie v. Gocking,* 214 N.C. 513, 199 S.E. 707.

We shall take it for granted without so adjudging for the purpose of this appeal that Capps violated G.S. 20-154 by undertaking to make a left turn from the highway into the unpaved road across the path of the oncoming automobile driven by Jernigan without first seeing that such movement could be made in safety and without first giving Jernigan any signal of his intention to make such movement.

When the evidence at the trial is interpreted in the light most favorable to plaintiff, it justifies these inferences: That Jernigan drove his automobile on his right side of the highway in a place outside a business or residential district at a speed of not less than sixty miles an hour; that Jernigan saw Capps undertake to make an unsignaled left turn across his path toward the entrance to the unpaved road when the two automobiles were separated by a space of 300 feet; that Jernigan did not thereafter have the right to assume or to act on the assumption that Capps would not make the left turn which he actually saw him making; that

Jernigan could have avoided any collision with the Capps car after he saw it making the left turn by reducing his speed, or by stopping his automobile, or by driving onto the left side of the highway to the rear of the turning Capps car; that instead of taking one of these courses of action, Jernigan proceeded straight ahead on his right side of the highway at unabated speed until he was in virtual contact with the Capps car in the vain hope that his excessive speed would enable him to clear the juncture of the highway and unpaved road in front of the Capps car; that Jernigan then swerved to his right, left the highway, and entered the dirt shoulder lying north of the pavement and south of the mouth of the unpaved road in a desperate effort to extricate his automobile and its occupants from the imminent peril of collision with the turning Capps car; and that this desperate effort on the part of Jernigan proved unsuccessful when the left-hand front of his automobile struck the left-hand front of the Capps car, whose front wheels had also entered the dirt shoulder lying north of the pavement and south of the mouth of the unpaved road.

It thus appears that the evidence at the trial did not compel the single conclusion that the sole proximate cause of the collision was the improvident left turn made by Capps. The evidence was ample to support the quite different conclusion that Jernigan drove his automobile at an unlawful speed and failed to keep it under reasonable control and that his negligence in these respects, either of itself or in combination with concurrent negligence on the part of Capps, proximately caused the collision and the resultant injuries to the plaintiff.

It follows that the presiding judge erred in allowing Jernigan's motion for a compulsory nonsuit, and that such nonsuit must be

Reversed.