MARJORIE C. DAVIS, ADMINISTRATRIX OF THE ESTATE OF JETTIE LEE
    CROMER CARROLL, DECEASED v. ROXIE N. JESSUP, ADMINISTRATRIX
    OF THE ESTATE OF RUFUS CRUISE SAMUEL, DECEASED.
                              AND
C. O. CARROLL, ADMINISTRATOR OF THE ESTATE OF WILLIAM LEWIS CAR-
    ROLL, DECEASED v. ROXIE N. JESSUP ADMINISTRATRIX OF THE ESTATE
    OF RUFUS CRUISE SAMUEL, DECEASED.

(Filed 23 May 1962.)

1. Trial § 8—

   The court has discretionary power to consolidate actions to recover for
   the deaths of the driver and passenger in one automobile against the estate
   of the driver of the other car involved in the collision, and the act of
   the court in so doing will not be disturbed in the absence of a showing
   of prejudice.

2. Automobiles § 25;   Highways § 2—

   The authority of the State Highway Commission to promulgate special
   speed restrictions by the erection of proper signs along the highway,
   G.S. 20-141(d), extends to State highways within the territory of a
   municipality and to territory annexed by a municipality, and therefore
   where the State Highway Commission has posted a speed limit of 35
   miles per hour along a highway approaching an intersection within
   territory annexed by municipality, such special speed restriction is ef-
   fective.

3. Negligence § 8—

   The independent act of one tort-feasor will not insulate the negligence
   of another if such intervening act and resultant injury could have been
   reasonably foreseen and expected by the author of the primary negligence,
   and the question of intervening negligence is ordinarily one for the de-
   termination of the jury.

4. Automobiles §§ 17, 43—   The question of insulating negligence held
      for determination of jury on evidence in this case.

   The evidence tended to show that the driver of one vehicle approached
   a "Y" intersection on his right at a speed of some 50 miles per hour, that
   special speed restrictions of 35 miles per hour had been posted on the
   approach to the intersection, and that immediately before he reached the
   intersection a vehicle traveling in the opposite direction pulled out of a
   line of traffic and attempted to turn left into the intersecting highway,
   resulting in the collision in suit. Held: The evidence does not warrant
   nonsuit on the ground of the intervening negligence of the driver of the
   car turning left into the intersection, since such act could have been
   reasonably foreseen and expected.

5. Automobiles § 50—

   Testimony elicited on cross-examination of the administratrix of a
   minor that the minor handled her own pay check as she saw fit and was
   purchasing the car in question with her own money, and drove it wherev-
   er she wanted to, is sufficient to amount to an admission that the intestate
   was the owner of the vehicle, notwithstanding the vehicle was registered

in the name of her father, so as to raise a presumption that while she was riding therein with her husband driving on a joint interprise, he was her agent, and, nothing else appearing, such presumption warrants an instruction to the effect that his negligence would be imputed to her as a matter of law.

APPEAL by plaintiffs from *Preyer, J.*, 25 September Term 1961 of FORSYTH.

These actions arose out of a collision between a 1960 Valiant automobile driven by plaintiff C. O. Carroll's intestate, William Lewis Carroll, and a 1953 Ford automobile driven by the defendant's intestate, Rufus Cruise Samuel. Plaintiff Marjorie C. Davis' intestate, Jettie Lee Cromer Carroll, was a passenger in the Valiant automobile at the time. The accident occurred at the intersection of U. S. Highway 311, also known as North Main Street Extension, and Old Winston Road in the City of High Point, North Carolina, at approximately 11:30 a.m. on 20 May 1960. Rufus Cruise Samuel and Jettie Lee Cromer Carroll died almost instantly from injuries sustained in the accident, and William Lewis Carroll died some nine hours later.

These actions were consolidated for trial over objections by the plaintiffs.

William Lewis Carroll and Jettie Lee Cromer Carroll were married in High Point approximately 30 to 45 minutes prior to the accident resulting in their deaths. After their marriage they proceeded northwardly on U. S. Highway 311 in the direction of Winston-Salem, where they both resided.

Dewey Boles of Kernersville, North Carolina, was the only eyewitness who testified in these actions. His testimony may be summarized as follows: That he was traveling in a northerly direction on U. S. Highway 311 at a speed of about 50 miles per hour; that the Valiant automobile driven by William Lewis Carroll came up behind him at a speed of from 70 to 75 miles per hour; that Jettie Lee Cromer Carroll was seated close to the driver, with her left arm around his shoulders; that the Valiant pulled out into the left-hand lane to pass him; that the Valiant pulled back into the right-hand lane in front of him approximately 150 to 200 feet before it reached the intersection; that the Ford automobile driven by Rufus Cruise Samuel was the second in a line of three or four vehicles proceeding southwardly on U. S. Highway 311, about 25 feet from the automobile in front of it; that he did not see the Ford before it started to turn left into Old Winston Road, and could not tell whether the driver gave a signal or not; that at the time the Ford pulled out, the Valiant had just pulled back into its right-hand lane, and was proceeding at a speed of approximately 50 miles per hour; and that, a split second later, the

two automobiles collided in the northern portion of the intersection. The automobiles behind the Ford stopped; they were going straight, but they stopped.

Boles further testified that visibility on that day was about a quarter of a mile, looking northwardly from the intersection, and 300 yards looking southwardly.

U. S. Highway 311, where the collision occurred, runs generally north and south, and Old Winston Road runs southeastwardly from its intersection with U. S. Highway 311. It does not extend west of the Highway. U. S. Highway 311 is cement and 22 feet in width. Old Winston Road, at the point of the intersection, is asphalt and 18 feet in width.

Approximately 240 yards south of the intersection there was a diamond-shaped sign with a cross, representing an intersection, and just below this, there was a square yellow sign with "35 MILES PER HOUR" written thereon in black letters. To the north of the intersection on the west side of U. S. Highway 311, for southward traffic, there was a similar sign. Closer to the intersection there was a sign with the word "CHURCH" written thereon. These signs were not erected by the City of High Point, although this area was annexed by the City on 1 January 1960. The evidence indicates that these signs had been erected by the State Highway Commission.

The evidence tends to show that the driver of the Ford car pulled to the left out of a line of traffic going south, for the purpose of entering the old Winston Road. The Ford car, driven by defendant's intestate, and the Valiant car, driven by plaintiff C. O. Carroll's intestate, according to the testimony of Dewey Boles, were only 50 to 75 feet apart when the Ford crossed the center line. The Valiant never crossed the center line to the left. However, the evidence further tends to show that the driver of the Valiant applied his brakes immediately when the Ford started to cross the center line, and left skid marks for a distance of 83 feet south of the point where the collision occurred.

Plaintiff Marjorie C. Davis, mother of Jettie Lee Cromer Carroll, gave the following testimony on cross-examination by the defendant: "Jettie Lee was paying for the Valiant, but it was in her father's name. The reason the car was in her father's name was because she was not 21. She was paying for the car with her own money at the time of the accident. As far as I know, she drove the car whenever she wanted to. I did not go with her when it was purchased. She had talked to me about buying a car before the automobile was purchased; she had wanted a car for some time. She brought it over and showed it to me. Jettie Lee handled her own pay check as she saw fit; it was

her money, to spend as she saw fit. She had had this car about five months."

The court submitted issues of negligence, contributory negligence, and damages to the jury in both cases. His Honor ruled as a matter of law that Jettie Lee Cromer Carroll was the owner of the Valiant automobile, even though it was registered in her father's name, and that the car was being driven by her husband, with her consent, on a joint enterprise. The jury was instructed to answer the issue of contributory negligence the same in both cases. The jury answered the issues of negligence and contributory negligence in the affirmative in both cases. Judgment was entered dismissing each action.

From the aforesaid judgments the plaintiffs appeal, assigning error.

*White & Crumpler; Leslie G. Frye and Harrell Powell, Jr., for plaintiff appellants.*

*Jordan, Wright, Henson & Nichols for defendant appellee.*

DENNY, C.J.   The plaintiffs' first assignment of error is to the consolidation of these actions for trial. The trial court possesses the discretionary power in proper cases to order the consolidation of actions for trial. McIntosh, North Carolina Practice & Procedure, 2nd Ed., Vol. I, Section 1342; *Peeples v. R.R.*, 228 N.C. 590, 46 S.E. 2d 649, and cited cases. Moreover, when the consolidation of actions for the purpose of trial is assigned as error, the appellant must show injury or prejudice arising therefrom. Here, both actions grew out of the same accident, and in essence the complaints are identical, and so are the answers. The same defenses are interposed, the plaintiffs used the same witnesses, and the evidence was the same except on the question of damages. Both actions were against the same defendant, and both plaintiffs were represented by the same attorneys. Furthermore, it has not been shown on this record that the appellants were injured or prejudiced by the order of consolidation. This assignment of error is overruled.

The plaintiffs assign as error the following portion of the court's charge: "And the court further instructs you that within the intersection, between the two 35 miles per hour signs, the posted speed limit would be 35 miles an hour." The evidence is to the effect that the signs referred to were erected by the State Highway Commission. The plaintiffs contend that only city officials are authorized to post speed limits within the city. It is further contended that all the evidence shows that the land adjacent to U. S. Highway 311 in the vicinity of the intersection was open and, therefore, the 55 miles per hour speed limit provided for in G.S. 20-141 was applicable.

In the case of *Yost v. Hall,* 233 N.C. 463, 64 S.E. 2d 554, it is stated: "Certain of our highways are built and maintained in part out of funds contributed by the Federal government. They form links in an interstate system and are designated as U. S. highways. They are, nonetheless, State highways under the supervision and control of the State Highway and Public Works Commission. G.S. 20-158 is applicable to these just as it is to other State highways. The contention that Highway 52 was not a dominant or through highway for want of authority in the State Commission to so designate it is without validity."

G.S. 20-141 (d) provides: "Whenever the State Highway Commission shall determine upon the basis of an engineering and traffic investigation that any speed hereinbefore set forth is greater than is reasonable or safe under the conditions found to exist at any intersection or other place or upon any part of a highway, said Commission shall determine and declare a reasonable and safe speed limit thereat, which shall be effective when appropriate signs giving notice thereof are erected at such intersection or other place or part of the highway."

The authority of the State Highway Commission above provided does not stop at city limits, but extends to all State highways maintained by it, regardless of whether such highways are within the corporate limits of a city or town. There is no provision in G.S. 20-141 which supports the plaintiffs' contention. On the contrary, it is provided in G.S. 20-141 (f) (1): "Local authorities in their respective jurisdictions may in their discretion fix by ordinance such speed limits as they may deem safe and proper *on those streets which are not a part of the State highway system and which are not maintained by the State Highway Commission * * *.*" (Emphasis added)

The fact that the area surrounding the intersection of U. S. Highway 311 and the Old Winston Road was annexed by the City of High Point, and was a part thereof at the time of the accident, is of no consequence with respect to the force and effect of the signs posted on the Highway by the State Highway Commission. This assignment of error is without merit and is therefore overruled.

The appellants assign as error the statement of the defendant's contentions with respect to the negligence of William Lewis Carroll in the court's charge and the submission to the jury of the issue of contributory negligence in each case. These assignments are based on the contention that the court should have held, as a matter of law, that any negligent conduct on the part of William Lewis Carroll, plaintiff C. O. Carroll's intestate, was insulated by the negligence of Roxie N. Jessup's intestate, Rufus Cruise Samuel. The plaintiffs rely on the cases of *Butner v. Spease,* 217 N.C. 82, 6 S.E. 2d 808;

*Aldridge v. Hasty,* 240 N.C. 353, 82 S.E. 2d 331; and *Hudson v. Transit Co.,* 250 N.C. 435, 108 S.E. 2d 900.

The same contention was made by one of the defendants in *Bryant v. Woodlief,* 252 N.C. 488, 114 S.E. 2d 241, 81 A.L.R. 2d 939. In that case, the defendant Woodlief's automobile collided with the automobile of defendant Ray while the latter was attempting to turn into a driveway. There was evidence that Woodlief was operating his automobile at a speed of 80 to 90 miles per hour. Plaintiff's testate was a passenger in Ray's car. There was a judgment against both defendants in the lower court. On appeal, the judgment for the plaintiff was affirmed. This Court rejected defendant Woodlief's contention that if he was negligent, the negligence of defendant Ray insulated his negligence. We said: "The test of whether the negligent conduct of one tort feasor is to be insulated as a matter of law by the independent act of another, is well settled by our decisions. In *Harton v. Telephone Co.,* 141 N.C. 455, 54 S.E. 299, the Court said: ' * * * the test * * * is whether the intervening act and the resultant injury is one that the author of the primary negligence could have reasonably foreseen and expected * * *. We think it the more correct rule that, except in cases so clear that there can be no two opinions among men of fair minds, the question should be left to the jury to determine whether the intervening act and the resultant injury were such that the author of the original wrong could reasonably have expected them to occur as a result of his own negligent act * * *.' "

In our opinion, the cases relied on by the appellants herein are distinguishable and not controlling on the factual situation presented on this appeal.

We think that when the driver of the Valiant automobile entered a 35 miles per hour speed zone, at a plainly marked intersection, at a speed of 50 miles per hour, the driver of such car could have reasonably foreseen and expected that the driver of one of the several cars approaching the same intersection from the north on U. S. Highway 311, might turn left to enter the Old Winston Road. Therefore, we think the evidence disclosed on the record before us was sufficient to justify the submission of the issue of contributory negligence in each case. *Jernigan v. Jernigan,* 236 N.C. 430, 72 S.E. 2d 912; *Barker v. Engineering Co.,* 243 N.C. 103, 89 S.E. 2d 804.

The plaintiffs assign as error the ruling of the court below, as a matter of law, that the negligence, if any, of William Lewis Carroll would be imputed to Jettie Lee Cromer Carroll, and that the court instructed the jury that if the jury should answer the second issue "Yes" in the husband's case, it would answer the second issue "Yes" in the wife's case, or if the jury should answer the second issue "No"

in the husband's case, then it would answer the second issue "No" in the wife's case.

There is no allegation as to the ownership of the Valiant automobile in the pleadings of either of the plaintiffs. The defendant, in her answer to the complaint filed by Marjorie C. Davis, administratrix of the estate of Jettie Lee Cromer Carroll, deceased, alleged ownership of the Valiant in Jettie Lee Cromer Carroll. This was denied in the reply of Marjorie C. Davis.

No evidence was voluntarily offered by the plaintiffs as to the ownership of the Valiant automobile. The court made its ruling on the basis of the testimony of Marjorie C. Davis on cross-examination by the defendant.

In our opinion, the uncontradicted testimony of plaintiff Marjorie C. Davis, elicited on cross-examination, amounted to an admission that her intestate was the owner of the Valiant automobile. Therefore, we hold that this case clearly falls under the rules set forth in *Shoe v. Hood,* 251 N.C. 719, 112 S.E. 2d 543, in which *Moore, J.,* speaking for the Court, said: "Where it is admitted or proven that the wife was owner-occupant of an automobile operated by her husband, a presumption arises that the husband was her agent in the operation, or rather the inference is permitted that any negligence on his part in the operation of the automobile is imputed to her. But such presumption or inference is not absolute and irrebuttable. But it casts upon her, who is in possession of the facts, the burden of showing a bailment, other disposition or prevailing condition by which she relinquished, for the time being, the incidents of ownership and the right to control the manner and methods of its use. *Harper v. Harper, supra* (225 N.C. 260, 34 S.E. 2d 185) ; *Sink v. Sechrest,* 225 N.C. 232, 34 S.E. 2d 2; *Gaffney v. Phelps,* 207 N.C. 553, 178 S.E. 231; *Ross v. Burgan, supra* (126 N.E. 2d 592).

" 'The test is this: Did the owner, under the circumstances disclosed, have the legal right to control the manner in which the automobile was being operated — was his relation to the operation such that he would have been responsible to a third party for the negligence of the driver?' *Harper v. Harper, supra;* Restatement of Torts, sec. 491 (1938).

"Where the owner-occupant of an automobile claims to be a guest in the vehicle while driven by another and the evidence with respect to such contention is susceptible of conflicting interpretations, it presents a question of fact for the jury. *Harris v. Draper, supra* (233 N.C. 221, 63 S.E. 2d 209). 'Where, however, reasonable minds can reach but one conclusion from the uncontradicted facts, the question

becomes one of law for the court.' 4 Cyc. of Automobile L. & P.; Blashfield, sec. 2292, p. 326."

Likewise, in the case of *Eason v. Grimsley*, 255 N.C. 494, 121 S.E. 2d 885, this Court said: "The owner of an automobile, riding therein as a passenger, ordinarily has the right to control and direct its operation. The negligence, if any, of a party operating an automobile with the owner-passenger's permission or at his request is, nothing else appearing, imputed to the owner-passenger. *Shoe v. Hood*, 251 N.C. 719, 112 S.E. 2d 543; *Dosher v. Hunt*, 243 N.C. 247, 90 S.E. 2d 374; *Baird v. Baird*, 223 N.C. 730, 28 S.E. 2d 225."

We have examined the remaining exceptions and assignments of error and, in our opinion, no prejudicial error has been shown that would justify a new trial.

In the trial below, we find

No error.