658                     IN THE COURT OF APPEALS                   [15

DAVID MURRELL v. ROBERT KENNETH JENNINGS AND
JIMMY ISIAH JONES

No. 7210SC253

(Filed 23 August 1972)

Automobiles § 56— negligence in striking vehicle that entered highway

In an action by a passenger to recover for personal injuries received when defendant's vehicle struck the rear of a vehicle which had entered the highway in front of it from a servient street, the evidence, including testimony as to the physical facts at the accident scene, was sufficient to be submitted to the jury on the issue of defendant's negligence in failing to keep a proper lookout, failing to keep his vehicle under control, and failing to exercise due care after he had seen or should have seen the other vehicle enter the highway.

APPEAL by defendant Jimmy Isiah Jones from *Braswell, Judge,* 1971 Session of Superior Court held in WAKE County.

Civil action commenced 8 December 1970 to recover damages for personal injuries received by plaintiff on 24 May 1970 as the result of a collision between an automobile operated by the defendant Jennings and an automobile operated by the defendant Jones. In his complaint, plaintiff alleged that at or about 10:10 a.m. on 24 May 1970 he was a passenger in the Jones vehicle, a 1966 Chevrolet, and that they were proceeding in a southerly direction on U. S. Highway 15 in Durham County when the Jones vehicle ran up upon and violently struck from the rear a 1968 Pontiac automobile being operated by the defendant, Jennings, causing plaintiff certain "serious, painful and permanent injuries." It was alleged that just prior to the collision, Jennings had entered U. S. Highway 15 (a four-lane highway divided by a median strip) from Rural Paved Road 1116 (a two-lane road), had made a left turn across the two northbound lanes of Highway 15 and into one of the southbound lanes, and that the rear-end collision occurred "immediately beyond and South" of the intersection of Highway 15 and R.P.R. 1116. The plaintiff also alleged that the collision and the resultant personal injury were proximately caused by the negligence of the defendant Jennings in failing to yield the right-of-way to the traffic on Highway 15, in operating his vehicle in a careless and heedless manner, in failing to keep a proper lookout and in failing to keep his vehicle under control; and by the negligence of the defendant Jones in failing to reduce the speed of his vehicle when approaching an intersection whereat a special hazard

Murrell v. Jennings

existed, in operating his vehicle at a speed greater than was reasonable and prudent under the conditions, in failing to keep a proper lookout, in failing to keep his vehicle under control and in operating his vehicle in a careless and heedless manner.

Both defendants filed answers denying negligence on their own parts and, as defenses, setting out and alleging that the sole proximate cause of the plaintiff's injury was the negligence of the other defendant and that the plaintiff was contributorily negligent. Jury trial was demanded and had, and the jury answered the following issues as indicated:

"1. Was the plaintiff injured by the negligence of the defendant Robert Kenneth Jennings?

ANSWER: Yes.

2. Was the plaintiff injured by the negligence of the defendant Jimmy Isiah Jones?

ANSWER: Yes.

3. What amount, if any, is the plaintiff entitled to recover?

ANSWER: $5,000.00."

From judgment on this verdict, the defendant Jones perfected an appeal to the Court of Appeals.

*Yarborough, Blanchard, Tucker & Denson by James E. Cline for plaintiff appellee.*

*Smith, Anderson, Blount & Mitchell by James D. Blount, Jr., for defendant appellant Jimmy Isiah Jones.*

MALLARD, Chief Judge.

As appears in an addendum to the record filed in this appeal, the defendant Jones made a motion for directed verdict at the close of the plaintiff's evidence and renewed at the close of all the evidence (neither defendant presented evidence) and a motion for judgment notwithstanding the verdict, or, in the alternative for a new trial. Jones now assigns the trial court's failure to grant these motions as error; that is, it is this defendant's sole contention that the evidence, even when viewed in the light most favorable to the plaintiff and resolving

all contradictions or inconsistencies in his favor, was insufficient to go to the jury or to support their verdict on the question of his (Jones') actionable negligence. We do not agree.

The duties of motorists, both those on dominant and those on servient highways, when approaching, entering or traversing intersections are familiar law and are covered by a number of statutes in this jurisdiction. See, *e.g.* 60A, C.J.S., Motor Vehicles, § 350 (1) *et seq.;* G.S. 20-141 (c) ; G.S. 20-147 and G.S. 20-158. Suffice it to say here that each driver is required to exercise ordinary care under the particular circumstances in which he finds himself and that the failure to do so can constitute actionable negligence where injury results.

In the case before us, the parties stipulated to a number of "undisputed facts," among which were the following:

"(e) That at a short time prior to the collision the 1966 Chevrolet was being operated by the defendant Jones in a southerly direction along U. S. Highway 15.

(f) That at a short time prior to the collision the 1968 Pontiac was being operated by the defendant Jennings in a westerly direction along Rural Paved Road 1116.

(g) That at the time of the collision, at the point of intersection of U. S. Highway 15 and Rural Paved Road 1116, there was a lawfully erected stop sign facing traffic proceeding westerly along Rural Paved Road 1116. The stop sign was located at the eastern edge of U. S. Highway 15. There was no stop sign erected in the median which divided the northbound and southbound lanes of U. S. Highway 15.

(h) That at the time of the collision, U. S. Highway 15 was straight, level and dry, and the weather was clear.

(i) That at the time of the collision the plaintiff, David Murrell, was riding as a passenger in the rear seat of the defendant Jones' 1966 Chevrolet."

At the trial, plaintiff presented only two witnesses, himself and State Highway Patrolman Walter Parks Upright, who had arrived at the scene shortly after the collision occurred and who testified in some detail as to the relative positions of the

vehicles and physical facts existing at the scene (which testimony was illustrated by photographs admitted without objection as plaintiff's exhibits), as well as to statements made to him by each of the defendant drivers. A lengthy but illustrative portion of this testimony, both on direct and cross-examination, is as follows:

"Mr. Jennings stated to me that he had entered U. S. 15 from Rural Paved Road 1116, which leads from the Town and Campus Apartments where he lived. He stated that he had entered the roadway, crossed the northbound lanes and turned to go South on U. S. 15 when the collision occurred and did not see the car coming down the road.

I talked to Mr. Jones at the scene of the accident where he was incoherent and later talked to him at Duke Memorial Hospital. When I talked with Mr. Jones at the Duke Hospital, he was coherent and he told me that he had been going from Durham toward Chapel Hill and he saw the Jennings vehicle enter the intersection, whereupon he moved to the right lane to try to avoid him and give him a place to go and the Jennings' vehicle then crossed over and into the right lane into his path.

* * * When I arrived at the scene it was a clear day and the sun was shining. The surface of the road was a smooth, asphalt and the road is straight and level at the intersection. Just North of the intersection there is a slight rise in the road and a slight hillcrest, which is not severe.

*        *        *

I found some skid marks traced to the Jones' vehicle and the total tire impression left by the Jones' vehicle was 351 feet from the place where I found some debris on the highway which I used as a point of demarcation, there were skid marks before the debris and after the debris. From the point where the debris was found, there were skid marks leading up to the Jennings' car after that point, but none before that point.

When I talked with Mr. Jones at Duke Hospital, he was coherent and he told me that he saw Mr. Jennings' car as it came across the intersection and when he came into the southbound lane, Mr. Jones operated his auto-

mobile into the right lane southbound, that is, he continued in the southbound lane. Jennings' vehicle came over into the right lane and he tried to go back to the left to avoid it again, to avoid the Jennings' vehicle again, and an impact occurred. I traced skid marks up to the Jones' vehicle and some of them were before the point on the highway where the two operators told me the cars had collided. The tire marks from the Jones' vehicle led from a point where I found the vehicle back in a northerly direction. At the point where I found the Jennings' skid marks, I measured that distance back to the intersection and it was 61 feet. So from the approximate point of impact to the approximate center of the intersection it was 61 feet. I found the skid marks later traced to the Jones' vehicle beginning North of the intersection in the left-hand, southbound lane of travel as they went on in a southerly direction and as they went through the intersection they were part in each lane and as they left the southern edge of the intersection and continued in a southern direction, they got more in the left-hand lane until they actually left the left-hand lane and went to the rear of the car in the median.

*          *          *

* * * The marks left by the Jones' vehicle after the point which I believe to be the point of impact were skid marks. Mr. Jones told me he was going approximately 60 miles an hour, which is the posted speed limit in that area, when he was approaching the intersection. Up and until the point of impact, I found no brake marks indicating that a tire was locked in the braking position. Mr. Jennings told me that he was going approximately 10 miles an hour and he said he just pulled out into the intersection.

Tire impressions as distinguished from braking marks can be made by a car that is braking but does not have the wheels locked. The 351 foot marks left by the Jones' car include the entire distance of the tire impressions and the braking marks after the point of impact.

My opinion is that the point of impact was approximately 30 feet South of the end of the North end of the median. An operator of a motor vehicle would have

Murrell v. Jennings

an unobstructed view entering from the East going West and looking North of approximately ¼ of a mile. * * *

*          *          *

Of the total 351 feet of braking marks leading up to the Jones' vehicle, 171 feet of those were after the impact. * * *"

We noted in *Rogers v. Rogers,* 2 N.C. App. 668, 163 S.E. 2d 645 (1968), that G.S. 20-141(c) "does not require the driver of a vehicle to reduce the speed of his vehicle in all circumstances when approaching and crossing an intersection"; however, "(t)he fact that the speed of a vehicle is lower than the maximum speed limit at that particular place does not relieve the driver thereof from the duty to decrease speed when approaching and crossing an intersection, *when in the exercise of due care he should decrease his speed in order to avoid causing injury* to any person or property, and a failure to do so is negligence *per se,* and if the proximate cause of an injury would create liability. *McNair v. Goodwin,* 264 N.C. 146, 141 S.E. 2d 22; *Bass v. Lee,* 255 N.C. 73, 120 S.E. 2d 570; *Hutchens v. Southard,* 254 N.C. 428, 119 S.E. 2d 205; *Primm v. King,* 249 N.C. 228, 106 S.E. 2d 223; *Day v. Davis,* 268 N.C. 643, 151 S.E. 2d 556." (Emphasis original.)

We are not unmindful of the rules that evidence that merely establishes that a collision or accident occurred is not, of itself, sufficient to show negligence and that a driver on a dominant highway may assume up until the last moment that an operator of a vehicle on an intersecting servient highway will obey the laws controlling his entry into the dominant highway. In this case, however, we think there was something more than evidence tending to show that a collision occurred.

"Physical facts tell their own story. They may be sufficiently strong within themselves, or in combination with other evidence, to permit the legitimate inference of negligence on the part of the driver. ' . . . Physical facts are sometimes more convincing than oral testimony.' *Yost v. Hall,* 233 N.C. 463, 64 S.E. 2d 554; *Powers v. Sternberg,* 213 N.C. 41, 195 S.E. 88. ' . . . What the physical facts say when they speak is ordinarily a matter for the determination of the jury.' *Jernigan v. Jernigan,* 236 N.C. 430, 72

S.E. 2d 912." *Lane v. Dorney,* 252 N.C. 90, 113 S.E. 2d 33 (1960). See also, *King v. Powell,* 252 N.C. 506, 114 S.E. 2d 265 (1960).

We think that the jury in this case was entitled to consider the testimony of Patrolman Upright on the question of this defendant's actionable negligence, and that they would be entitled, although not compelled, to find that Jones failed to keep a proper lookout, failed to keep his vehicle under control, and failed to exercise due care after he had seen or should have seen the Jennings' vehicle enter the highway to avoid the collision that did occur.

In *King v. Powell, supra,* Justice Bobbitt (later C.J.) quoted the following from the opinion of Johnson, J., in *Blalock v. Hart,* 239 N.C. 475, 80 S.E. 2d 373 (1954) :

"However, the driver on a favored highway protected by a statutory stop sign (G.S. 20-158) does not have the absolute right of way in the sense he is not bound to exercise care toward traffic approaching on an intersecting unfavored highway. It is his duty, notwithstanding his favored position, to observe ordinary care, that is, that degree of care which an ordinarily prudent person would exercise under similar circumstances. In the exercise of such duty it is incumbent upon him in approaching and traversing such an intersection (1) to drive at a speed no greater than ·is reasonable and prudent under the conditions then existing, (2) to keep his motor vehicle under control, (3) to keep a reasonable careful lookout, and (4) to take such action as an ordinarily prudent person would take in avoiding collision with persons or vehicles upon the highway when, in the exercise of due care, danger of such collision is discovered or should have been discovered. (Citations omitted.)"

For the foregoing reasons, we think that the trial judge in this case did not err in failing to grant the defendant Jones' motions for directed verdict and judgment notwithstanding the verdict, as the evidence was sufficient to raise a legitimate inference of negligence.

No Error.

Judges MORRIS and PARKER concur.