## CIRCUIT COURT OF STAFFORD COUNTY

Mark Joseph Ratcliff

v.

Culpeper Stone Co., Inc., et al.

March 17, 1994

Case No. 92000243

BY JUDGE JAMES W. HALEY, JR.

The issue here for resolution is whether Mark Joseph Ratcliff is barred from pursuing a common law tort action against Culpeper Stone Company and its employee Robert Caldwell by the exclusivity provisions of the Virginia Workman's Compensation Act.

By Code Section 65.1–40,[1] the rights and remedies provided by the Workman's Compensation Act "shall exclude all other rights and remedies" available to an employee injured during employment.

Code § 65.1–41[2] grants an exception to this exclusivity, however, if:

> the employee's injury is caused by the negligent act of a party who is a stranger to the trade, occupation or business of his employer, the employee may maintain an action at law against the "other party." *Whalen v. Dean Steel Erection Co.*, 229 Va. 164, 167, 327 S.E.2d 102, 105 (1985); *Stewart v. Bass Construction Co.*, 223 Va. 363, 365, 288 S.E.2d 489, 490 (1982).

*Colin v. Turner's Express, Inc.*, 229 Va. 557, 559, 331 S.E.2d 453, 455 (1985). See also, *McCall, Adm'r. v. Bowater, Inc.*, 717 F. Supp. 1153 (W.D. Va. 1989).

Whether a party is a stranger "depends upon the facts and circumstances in each case, and for that reason, the question does not readily

---

[1] The injury in this case occurred on May 15, 1990. By 1991 amendment, § 65.1–40 is now § 65.2–307.

[2] Now § 65.2–309.

yield to categorical or absolute standards." *Basset Furniture v. McReynolds*, 216 Va. 897, 902, 224 S.E.2d 323, 326 (1976). That observation is never more true than where, as in the instant case, the facts involve delivery of material to a job site.

S. W. Rogers Co. ("Rogers") contracted with Pinnacle Development Company, the owner of the land, to do subdivision site work which included installing concrete curbs and gutters. At Roger's request, Colonial periodically delivered concrete in mixer trucks to the job site, and the concrete was poured through a chute attached to the truck into forms supplied and placed by Rogers. The only Colonial employee involved in the operation was the driver of the mixer truck. Colonial's sole business activity is supplying ready mixed concrete. Rogers does not mix, supply, or deliver concrete.

On May 15, 1990, a cul-de-sac was being constructed with forms consequently curved. Because of this curvature, to pour concrete it was necessary for the mixer truck to move forward and backward and the chute to be moved from side to side over the forms. With the Colonial driver in the cab of the truck, an employee of Rogers directed him where and when to move the truck, and an employee of Rogers moved the chute. This division of labor was standard procedure (T. 15–16, 50–52). It is necessary for the driver to be in the truck to pour, and accordingly, he cannot simultaneously serve as chute man.

In some instances, it was necessary to attach a second chute as an extension to enable the concrete to reach the form. Such an instance arose, and Colonial's driver, Caldwell, got out of the truck and "got the chute and set it on the existing chute and told the chute man to hold it . . . I had to go back to the truck and raise it hydraulically . . . so it would match the form we were pouring before . . . ." (T. 13–14). Apparently, the plaintiff, Ratcliff, was injured when the chute was lowered. Ratcliff, an employee of Rogers, was a concrete "finisher" whose job did not include any responsibilities "with the chute or the concrete truck driver." (T. 32–36, 39). Rogers' May 15, 1990, daily work log recites: "Materials received: Concrete Form: Colonial."

In *Stout v. Onorati*, 221 Va. 143, 267 S.E.2d 154 (1980), the Supreme Court summarized three delivery decisions as follows:

> In *Bosher v. Jamerson*, 207 Va. 539, 151 S.E.2d 375 (1966):
>
>> a general contractor was required to construct a concrete floor on a six-inch sand base. Under contract with the general contractor, the supplier of sand was obligated to deliver the same

to the job site, dump it, and spread it as directed by the general contractor. While the driver who delivered the same was engaged in the spreading operation, the truck he was operating struck and injured the plaintiff, an employee of the general contractor. This Court held that because the truck driver was engaged in the business of the general contractor, the plaintiff's common-law action against the driver's employer was barred.

221 Va. at 149, 267 S.E.2d at 158.

In *Burroughs v. Walmont, Inc.*, 210 Va. 98, 168 S.E.2d 107 (1969):

this Court permitted prosecution of a common-law action brought by a plaintiff-deliveryman, injured while engaged in delivery of sheetrock in specified quantities to particular rooms of homes under construction. The Court held the plaintiff was not engaged in the trade, business or occupation of the defendant general contractor because he did not participate in the construction of the homes but was merely engaged in the final act of delivery. This case, we said, was distinguishable from *Bosher* in which the truck driver both delivered the sand and participated in laying the sand base.

221 Va. at 149, 267 S.E.2d at 158.

In *Hipp v. Sadler Materials Corp.*, 211 Va. 710, 180 S.E.2d 501 (1971):

we held the Act did not bar plaintiff's action at law. But there, an employee of defendant, which had agreed to furnish and pour concrete at a job site, struck and injured plaintiff while plaintiff was working for another subcontractor at the site. Defendant's employee, required to pour the concrete of specified strength into forms and footings as directed by the concrete finishing subcontractor, was not obligated to spread or finish the material. In that case, the Court held that defendant's employee was performing the final act of delivery, not an act of construction constituting the trade, business, or occupation of the general contractor.

211 Va. at 149, 267 S.E.2d at 158.

The court in *Bosher, supra*, distinguished its decision from *Buffalo Shook Co. v. Barksdale*, 206 Va. 45, 141 S.E.2d 738 (1958), because that decision:

> turned on the fact that Bolt and his employer Barksdale (the plaintiff) had no obligation to unload the truck . . . (in Shook's lumberyard) (and) . . . Shook's employee, by unloading the truck, did not become engaged in the trade, business or occupation of Bolt.

207 Va. at 543, 151 S.E.2d at 377.

These cases generated much testimony as to whether the activities of Colonial's driver, Caldwell, constituted "spreading" the concrete. Though the evidence on this point is in conflict, the court accepts the testimony of Gary Dunning, the concrete foreman for Rogers. He testified:

Q. What is your interpretation of spreading?
A. Spreading . . . is grading the concrete when it hits the forms. Like it comes out in a pile. You have to spread it to grade it . . . to get the right elevation.
Q. Does the truck driver have anything to do with the spreading?
A. He has nothing to do with that. That's all left up to us . . . The spreading will begin after it comes out the chute. (Tr. pp. 51–52).

Under the facts and circumstances of this case, the court finds as a fact that "spreading" is the movement of concrete once the concrete leaves the possession of Colonial's equipment. The instant case is controlled by *Hipp* rather than *Bosher*. Colonial and Caldwell's activities were the final act of delivery, not a part of the trade, business or occupation of Rogers, and accordingly, Colonial and Caldwell are strangers amenable to the tort action filed by Rogers' employee, Ratcliff.

This position is supported by inference by *Wilson v. Daniel International Corp.*, 15 N.C. App. 658, 197 S.E.2d 686 (1973). There, Winyah Concrete, a ready-mix company, was supplying concrete to Daniel, a general contractor. Wilson, Winyah's driver:

> was required to maneuver the truck into position as instructed and let down an adjustable chute, which Daniel's employees would then position . . . (Wilson) was injured by an unex-

pected movement of the discharge chute while it was being positioned by a Daniel's employee.

Relying upon *Hipp, supra, Goldstein v. Acme Concrete Corp.*, 103 So. 2d 202 (Fla. 1958), *Doyle v. Missouri Valley Constructors, Inc.*, 288 F. Supp. 121 (D. Col. 1968), the North Carolina Court of Appeals concluded that Wilson's tort action against Daniel was not barred by the exclusivity provisions of the Workman's Compensation Act because:

> Winyah was not engaged in the execution or performance of any part of Daniel's work. As an independent vendor of ready-mixed concrete, it was engaged in its own work when it mixed and delivered its materials to Daniel or to any other customer.

197 S.E.2d at 689.

The motion to dismiss the tort action is denied.